ESPINOSA, Judge:
¶1 The state appeals the trial court's suppression of evidence taken from Bryan Lietzau's cell phone, arguing the court erred in denying its request to present testimony from Lietzau's probation officer at the suppression hearing and in granting Lietzau's motion to suppress. For the following reasons, we reverse and remand.
*841 Factual and Procedural Background
¶2 "We discuss only those facts relevant to the suppression ruling challenged on appeal," State v. Navarro , 241 Ariz. 19, ¶ 2, 382 P.3d 1234 (App. 2016), viewing them "in the light most favorable to sustaining the trial court's ruling," State v. Gonzalez , 235 Ariz. 212, ¶ 2, 330 P.3d 969 (App. 2014). Because no testimony was taken at the suppression hearing under review, we draw the facts from the record of the hearing, including the materials appended to the motions, and non-disputed facts presented in the parties' briefs.[1] See Navarro , 241 Ariz. 19, n.1, 382 P.3d 1234.
¶3 In August 2014, Lietzau was placed on probation for aggravated harassment. In accordance with the terms of his written conditions of supervised probation, Lietzau agreed to submit to "search and seizure of person and property" by the Adult Probation Department "without a search warrant." He also agreed to grant safe access to his residence and property, submit to searches and seizures of "person and property by any probation officer," and provide probation officers with truthful answers to inquiries.
¶4 In early December 2014, a woman contacted Lietzau's probation officer to report "an inappropriate relationship" she believed Lietzau was having with her thirteen-year-old daughter, S.E. A few weeks later, a probation surveillance officer arrested Lietzau for violating conditions of his probation based on his failure to provide access to his residence, participate in counseling programs, comply with drug testing, and perform community restitution. On the way to the jail, the surveillance officer examined Lietzau's cell phone and saw numerous text messages between Lietzau and S.E. The probation department reported these findings to the Tucson Police Department ("TPD"); a police detective then obtained a search warrant[2] and discovered incriminating photos and text messages in the phone. Lietzau was subsequently indicted on charges of sexual conduct with a minor.
¶5 Lietzau filed a motion to suppress all evidence gleaned from his cell phone, citing Riley v. California , 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), and arguing the initial search violated his Fourth Amendment rights because warrants "are required for searches of cell phones incident to arrest." He also contended, in the alternative, that the search was unreasonable under the totality of the circumstances, citing State v. Adair , 241 Ariz. 58, 383 P.3d 1132 (2016). The state countered that no constitutional violation occurs when a warrantless search is expressly authorized in a probationer's terms of probation, and maintained that the search of Lietzau's phone fell within the scope of the search conditions in his probation orders, and therefore was "within the probation search exception to the warrant requirement." The state further argued that Riley was "inapposite" because the defendants there were not on probation, and the search here was in compliance with Adair . The trial court granted Lietzau's motion to suppress, reasoning that the surveillance officer's search of the phone had not been related to Lietzau's "administrative" violations of probation, and was therefore "arbitrary," and impermissible. The state appealed; we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4032(6).
Discussion
¶6 The state contends the trial court erred by suppressing the cell phone evidence because the surveillance officer's examination of Lietzau's phone "was reasonable," and therefore "constitutional" under Adair . It also suggests the search was consensual pursuant to Lietzau's conditions of probation, in which he "agreed and acknowledged" that his personal property could be searched without *842 a warrant. We review a trial court's ruling on a motion to suppress for abuse of discretion, Adair , 241 Ariz. 58, ¶ 9, 383 P.3d 1132, but review de novo the court's ultimate legal determination whether the search complied with the Fourth Amendment, State v. Davolt , 207 Ariz. 191, ¶ 21, 84 P.3d 456 (2004).
¶7 The United States and Arizona Constitutions protect against unreasonable searches and seizures, U.S. Const. amend. IV ; Ariz. Const. art. II, § 8, and a search conducted without a warrant is presumed unreasonable, absent certain exceptions to this rule, State v. Gant , 216 Ariz. 1, ¶ 8, 162 P.3d 640 (2007). A search incident to arrest is one such exception, see Davis v. United States , 564 U.S. 229, 234-35, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), which the United States Supreme Court justified because of "the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime," Chimel v. California , 395 U.S. 752, 764, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The exception, however, does not extend to the search of data contained on cell phones. Riley , 573 U.S. at 386, 134 S.Ct. 2473. In Riley , the Court recognized the significant information stored on cell phones that "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." Id . at 393, 134 S.Ct. 2473. Thus, a warrant is generally required before a cell phone is searched, even if the search is incident to arrest. Id. at 401, 134 S.Ct. 2473 ; see also State v. Peoples , 240 Ariz. 244, ¶ 13, 378 P.3d 421 (2016) ("[C]ell phones contain 'the privacies of life' and are therefore worthy of Fourth Amendment protection." (quoting Riley , 573 U.S. at 403, 134 S.Ct. 2473 )).
¶8 Here, the trial court considered Riley because the surveillance officer searched Lietzau's cell phone a short time after arresting him for probation violations, but correctly noted that Riley did not "deal with the issue of when someone's on probation, and they've agreed to allow the Probation Department to search their property." The court then considered United States v. Lara , a Ninth Circuit case reversing the denial of a suppression motion based on a warrantless and suspicionless search of a probationer's cell phone, in part because his terms of probation did not clearly encompass such a search. 815 F.3d 605, 607, 610, 614 (9th Cir. 2016). The trial court lastly discussed Adair and concluded the search of Lietzau's phone was improper. The state contends the court erroneously relied on Lara because it is significantly distinguishable from Lietzau's case, and, in any event, not binding on Arizona courts, and argues the court misapplied Adair .
Probationary Search
¶9 Our supreme court has held that when a defendant is on probation, "his expectations of privacy are less than those of other citizens not so categorized." State v. Montgomery , 115 Ariz. 583, 584, 566 P.2d 1329 (1977). More recently in Adair , the court described a probationer's privacy interests as "significantly diminished." 241 Ariz. 58, ¶ 23, 383 P.3d 1132 (quoting United States v. Knights , 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ). The court then balanced those interests against the state's substantial interests in public safety and reducing recidivism and, rejecting the argument that some level of founded suspicion was required to conduct a warrantless search, held that a "search of [a] residence pursuant to the probation conditions complied with the Fourth Amendment if it was reasonable under the totality of the circumstances." Id . ¶¶ 15-23. The court went on to identify factors to consider when determining the reasonableness of a search. Id. ¶ 25. For example, as this court had previously noted, "[t]he target of the search must be a known probationer subject to a valid, enforceable probation condition allowing a warrantless search," "[t]he search must be conducted by a probation officer in a proper manner and for the proper purpose of determining whether the probationer was complying with probation obligations," and "the search must not be arbitrary, capricious[,] or harassing." Id. (quoting State v. Adair , 238 Ariz. 193, ¶ 21, 358 P.3d 614 (App. 2015) ). Other factors bearing on reasonableness include
the nature and severity of the probationer's prior conviction(s) for which he is on *843 probation; the content and scope of the probation conditions; the nature and severity of the suspected criminal offenses or probation violations giving rise to the search; whether the suspected crimes or violations are the same as or similar to the crimes of which the probationer was previously convicted; and the nature, source, and plausibility of any extraneous information supporting the search.
Id. The trial court here cited these factors and concluded the search was unreasonable, finding it "arbitrary" and therefore in violation of Lietzau's constitutional rights. As stated earlier, we review its legal conclusion de novo. Davolt , 207 Ariz. 191, ¶ 21, 84 P.3d 456.
¶10 At the outset, we note that the facts of Lietzau's case may be viewed as falling somewhere on a spectrum between Lara , to the extent that case may be persuasive, and Adair , the binding precedent of our supreme court. As in Lara , the search here involved a cell phone and its data, for which the Supreme Court has afforded heightened protection. See Riley , 573 U.S. at 403, 134 S.Ct. 2473 ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' " (quoting Boyd v. United States , 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886) )). And while the search terms of Lietzau's probation broadly include "property," Lietzau argues they do not expressly or unambiguously include a cell phone. See Lara , 815 F.3d at 610 (terms of probation, "including any residence, premises, container or vehicle" under defendant's control did not "clearly or unambiguously encompass" defendant's cell phone).
¶11 Looking to Adair , however, Lietzau was under active probation supervision and subject to a valid, enforceable condition of his probation expressly authorizing warrantless searches by probation officers. Adair , 241 Ariz. 58, ¶ 12, 383 P.3d 1132 ; see Knights , 534 U.S. at 121, 122 S.Ct. 587 (warrantless search upheld where authorized by terms of probation and new offense suspected). And, unlike Lara , but as in Adair , the search here was not without suspicion. Importantly, the probation department had a reasonable ground to suspect Lietzau might be engaged in an improper relationship with a minor, a serious offense and one that would be a patent violation of his probation. See A.R.S. § 13-1405(B) (sexual conduct with a minor under fifteen is a class two felony). Additionally, given the nature of S.E.'s mother's complaints, there was reason to investigate whether Lietzau's cell phone might contain evidence corroborating her report. Contrary to the trial court's conclusion, the totality of circumstances, as more specifically detailed below, clearly tip towards a finding of reasonableness under Adair .
Application of Adair
¶12 First, Lietzau was on felony probation, and his probation officer had been contacted by an identified individual whose only motivation was that of a mother concerned for her child's safety. She specifically named Lietzau, obviously known to her as a criminal offender, and indicated she had reason to believe he was inappropriately involved with her thirteen-year-old daughter. Indeed, she contacted the probation department on more than one occasion, including the arresting surveillance officer, to voice her fears. The probation department thus had a well-founded, non-arbitrary reason to suspect Lietzau of committing another felony while on probation, rather than "[m]ere speculation," as urged by Lietzau. While Lietzau asserts the probation department "had no information to indicate that the inappropriate nature of that relationship was criminal or otherwise violated [his] conditions of probation," it is well established that reasonable suspicion is not negated by possibilities of innocent conduct. See State v. Evans , 237 Ariz. 231, ¶ 11, 349 P.3d 205 (2015) (to justify suspicion, officer need not rule out the possibility of innocent explanations for conduct); State v. Teagle , 217 Ariz. 17, ¶ 49, 170 P.3d 266 (App. 2007) (reasonable suspicion is based on particularized and objective facts, not hard certainties).
¶13 Although there was no testimony about the arresting officer's motivation in searching Lietzau's phone after the trial court declined to hear the state's probation department witness, and Lietzau argues the *844 state failed to make an offer of proof and thereby waived this issue, the motions before the court at that time contained such evidence, including the transcribed interview of the surveillance officer. See State v. Treadaway , 116 Ariz. 163, 168, 568 P.2d 1061 (1977) (offer of proof not necessary when substance of potential testimony apparent); see also State v. Keener , 110 Ariz. 462, 465, 520 P.2d 510 (1974) (hearsay generally admissible in suppression hearing); Ariz. R. Evid. 104(a) (trial court not bound by the Arizona Rules of Evidence in suppression hearing). The arresting officer expressly stated in his interview that he was aware of the allegations made by S.E.'s mother; in fact, he had spoken with her himself. And even had that not been the case, it would be of little moment because cumulative police information and knowledge are attributed to an arresting officer. See State v. Lawson , 144 Ariz. 547, 553, 698 P.2d 1266 (1985) (arresting officer need not "personally be in possession of all the facts" so long as collective knowledge of all officers sufficient); State v. Keener , 206 Ariz. 29, ¶ 14, 75 P.3d 119 (App. 2003) ; see also United States v. Sutton , 794 F.2d 1415, 1426-27 (9th Cir. 1986) (suspicion justified by collective information known by officers).
¶14 Second, cell phones are "ubiquitous" repositories of communications and photos "for a variety of purposes," State v. Tucker , 231 Ariz. 125, ¶ 17, 290 P.3d 1248 (App. 2012), and "[e]ven the most basic phones ... hold photographs, picture messages, [and] text messages." Riley , 573 U.S. at 394, 134 S.Ct. 2473. The use of these pervasive devices to convey communications of a sexual nature is well known, particularly involving older children and young adults. See, e.g. , State v. Ortiz , 238 Ariz. 329, ¶¶ 1, 24, 360 P.3d 125 (App. 2015) (defendant convicted of sexual conduct with a minor; " 'flirtatious' text messages" to victim evidence of "grooming" for purposes of child abuse); State v. Villegas , 227 Ariz. 344, 258 P.3d 162 (App. 2011) (conviction for luring minor for sexual exploitation arising from text messages and e-mail with police posing as fourteen-year-old girl); United States v. Brackett , 846 F.3d 987 (8th Cir. 2017) (child pornography conviction where minor sent sexually explicit photographs to defendant via cell phone); Miller v. Skumanick , 605 F.Supp.2d 634, 637 (M.D. Pa. 2009) (practice of sending sexually suggestive text messages and images via cell phone "widespread among American teenagers"); State v. Thomas , 197 Ohio App.3d 176, 966 N.E.2d 939, ¶ 5 (2011) (upholding conviction based on "sexually explicit electronic messages" to minors and their "tak[ing] sexually explicit photographs of themselves and ... send[ing] those photographs to [defendant's] cell phone"); State v. Carey-Martin , 293 Or.App. 611, 430 P.3d 98, 112 (2018) ("sending sexually explicit self-portraits" via cell phone "common among teenagers"); see also Elizabeth M. Ryan, Note, Sexting: How the State Can Prevent a Moment of Indiscretion from Leading to a Lifetime of Unintended Consequences for Minors and Young Adults , 96 Iowa L. Rev. 357, 360 (2010) (conveying "sexually suggestive text messages and images" via cell phone is a "social phenomenon among minors and young adults"); Oxford University Press, Word of the Year 2009, https://en.oxforddictionaries.com/word-of-the-year/word-of-the-year-2009%20 (last visited Jan. 31, 2019) (recognizing the term "sexting" as "the sending of sexually explicit texts and pictures" by cell phone).
¶15 Third, although the court in Lara determined that "property" does not "unambiguously include cell phone data" when read with specifically enumerated categories of property in defendant Lara's terms of probation, that particular scenario does not exist here. 815 F.3d at 611. And, other courts have held to the contrary. See People v. Sandee , 15 Cal.App.5th 294, 222 Cal.Rptr.3d 858, 864 (2017) (condition allowing search of "property" and "personal effects" included cell phone); State v. White , 890 N.W.2d 825, ¶ 13 (N.D. 2017) (probation conditions authorizing officers to search "person, vehicle or residence" included cell phones found inside residence); see also United States v. Yuknavich , 419 F.3d 1302, 1311 (11th Cir. 2005) (despite absence of probation condition authorizing searches, warrantless search of probationer's computer upheld). But more importantly, whether or not similar probation terms in Lara and this case could be viewed as including cell phones and their data, it is significant that the Lara court implied the search there *845 would have been valid had the officers possessed reasonable suspicion.[3] 815 F.3d at 607, 609-10.
¶16 Because, unlike in Lara , the search of Lietzau's cell phone was supported by reasonable suspicion that he was committing a new offense, we disagree with the trial court's conclusion that the search was not conducted for the proper purpose of determining his compliance with probation conditions. Adair , 241 Ariz. 58, ¶ 25, 383 P.3d 1132. An express condition of Lietzau's probation was "obeying all laws." Accordingly, although the court in Adair listed them as distinct factors, because the search here was for a proper purpose, we cannot say it was arbitrary, capricious, or harassing. See id. ¶ 25.
Trial Court's Findings
¶17 We lastly address Lietzau's assertions that "the [s]tate failed to present any evidence" that the search was conducted for a proper probationary purpose, and "the trial court's factual findings were fully supported by the evidence." The court's only factual findings, however, related to the way the search occurred, which was not disputed. In fact, the court concluded that the search had been conducted in the "proper manner." And after repeatedly denying the state's requests to introduce testimony, the court said it did not "need any" and went on to focus solely on the allegations underlying Lietzau's arrest. As noted earlier, the court proceeded to discuss case law, primarily Lara and Adair , and then concluded that the search had "violated [Lietzau's] constitutional rights," in large part because it found the search arbitrary for being unrelated to the underlying probation violations he was charged with. As already discussed, however, this conclusion was erroneous. Further, we are aware of no basis or authority, and Lietzau identifies none, holding that a probationary search is limited to the confirmation of known or charged probation violations.
¶18 Indeed, not even founded suspicion for a known or suspected violation of probation is required if the search of a probationer's home that would otherwise raise Fourth Amendment prohibitions is reasonable under the totality of the circumstances. Adair , 241 Ariz. 58, ¶ 1, 383 P.3d 1132 (the legality of a probationary search "does not hinge on whether the search is supported by reasonable suspicion"); United States v. King , 736 F.3d 805, 806 n.1, 810 (9th Cir. 2013) (rejecting argument that reasonable suspicion was required to authorize warrantless probationary search). If the search of a probationer's cell phone, however, invokes more constitutional protection than a search of his home, as argued by Lietzau citing Lara , we are nevertheless confident in concluding that actual founded suspicion falls much closer to the governance of Adair and, together with the surrounding circumstances, justified the warrantless search here. Stated differently, the Adair reasonableness standard, as applied to a probationer's cell phone, must necessarily be informed by facts supporting founded suspicion when it exists, as in the case at hand.
Conclusion
¶19 Under the totality of the circumstances, including Lietzau's significantly diminished privacy rights as a probationer, his acceptance of search conditions when he agreed to probation which arguably included his cell phone, the probation department's well-grounded suspicion that Lietzau might be involved in a serious offense with an adolescent child, and the well-known use of cell phones as an aid in committing sexual offenses against children, it cannot be said the officer's search of Lietzau's cell phone was unreasonable. See Adair , 241 Ariz. 58, ¶ 23, 383 P.3d 1132. Accordingly, we conclude the trial court abused its discretion in granting Lietzau's motion to suppress.[4]
*846 Disposition
¶20 Because we have determined the probationary search here was lawful on the specific facts involved, we reverse the trial court's order granting Lietzau's motion to suppress and remand the case for further proceedings consistent with this decision.

At the hearing, the state repeatedly asked that Lietzau's probation officer be permitted to testify, but the trial court declined its request, stating it had read the parties' "responses," and did not "need any testimony."

The warrant application stated that S.E.'s mother was aware her minor daughter was "possibly sexually active" with an adult, impliedly identified as Lietzau, S.E. had told a doctor she had been sexually active with a twenty-one-year-old male "on previous occasions," and the probation department had informed TPD they had reviewed Lietzau's cell phone and found "information on that phone that pertained to that relationship."

Thus, while Lietzau's probation terms are another factor to consider under Adair , it is not necessary to reach the issue of whether they constitute an independent waiver of rights regarding his cell phone or electronic data. See Knights , 534 U.S. at 117-18, 122 S.Ct. 587 (declining to resolve whether acceptance of probation term authorizing warrantless searches constituted waiver of Fourth Amendment rights).

Because we reverse on this ground, we need not address the state's additional argument that the trial court erred in not permitting its witness to testify at the evidentiary hearing.